## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID KISSI,

              Plaintiff,

      v.

EMC MORTGAGE CORPORATION, *et al*.,

              Defendants.

Civil Action No. 08-1796 (RBW)

## MEMORANDUM OPINION

This matter is before the Court on a motion to dismiss filed on behalf of EMC Mortgage Corporation and David Panzer, Esq. in which Joseph V. Buonassissi, II, Esq. has joined. For the reasons discussed below, the defendants' motion to dismiss will be granted.

### I.  BACKGROUND

Plaintiff David Kissi ("Kissi") and his wife, Edith R. Truvillion ("Truvillion"), purchased real property at 4303 Ammendale Road in Beltsville, Maryland (the "Ammendale Road property") in December 1999 for $110,000 with funding from Ameriquest of California.[1] *See* Memorandum in Support of EMC Mortgage Corporation and David Panzer's Joint Motion to Dismiss ("Defs.' Mot."), Exhibit ("Ex.") 1 (Declaration of David S. Panzer) ("Panzer Decl."), Ex. A at E196 (Affidavit in Support of a Statement Asserting the Exact Amount of Principal and Interest Owed to EMC for 4303 Ammendale Rd., Beltsville, MD 20705 and a Request to

---

[1]      Truvillion is not a party to this action.

Reinstate Mortgage or Grant Us 90 Days to Shop Around for a New Lender).[2]  In 2004, Kissi and

Truvillion secured a mortgage on the property of $210,000 from Wells Fargo Bank, N.A., of

which approximately $100,000 was a cash payment to the mortgagors.  *Id.* at E53 (State of

Maryland Land Instrument Intake Sheet); *see id.* at E196.  On August 16, 2004, Truvillion

executed a Promissory Note, *see id.* at E56 (Deed of Appointment of Substitute Trustees), and

both Kissi and Truvillion executed a Deed of Trust securing the Promissory Note, *id.* at E25-43

(Deed of Trust).  The Promissory Note provided for an adjustable interest rate.  *Id.* at E47-49

(Adjustable Rate Rider).  The Ammendale Road property appeared to be an investment property

as it was not the Kissi's and Truvillion's principal residence.  *Id.* at E52 (Finance Affidavit).

EMC Mortgage Corporation ("EMC") became the holder of the Promissory Note, and EMC

appointed Joseph V. Buonassissi, II ("Buonassissi") and others as substitute trustees in July

2005.  *Id.* at E56.

### A.  The Defendants' Representations

Kissi and Truvillion defaulted on the Promissory Note and the Deed of Trust.  *Id.* at E89

(Statement Under Oath as to Mortgage Debt and Military Affidavit) ¶ 5.  On July 27, 2005,

Buonassissi and the other substitute trustees initiated foreclosure proceedings in the Circuit Court

for Prince George's County, Maryland against the Ammendale Road property.  *Id.* at E23-24

(Order to Docket, Case No. CAE 05-15718).  As of the filing of the foreclosure case, Kissi and

---

[2]        Exhibit A to the declaration of David Panzer "is a true and accurate copy of the
Record Extract prepared by counsel for David Kissi, in the Foreclosure Appeal, challenging the
decisions of the Prince George's County Circuit Court in the Foreclosure Case."  *Id.* ¶ 5.  The
Court can and therefore does take judicial notice of public records from the Circuit Court's
proceedings.  *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005);
*Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216-17 (D.D.C. 2002).

Truvillion owed EMC $226,320.  *Id.* at E89 ¶ 6.  On March 23, 2006, one day before the

foreclosure sale of the Ammendale Road Property, Kissi and Truvillion filed an objection to the

foreclosure sale and made a counterclaim for fraud demanding damages of $100 million.  *Id.* at

E91-92 (Objection to the Foreclosure Sale on 3/24/06 of 4303 Ammendale Rd., Beltsville, MD

20705 Combined with a Tort Complaint Seeking $100 Million for Fraud and Misrepresentation

Against Joseph V. Buonassissi, II Personally and Against EMC Mortgage of Texas Re: Mortgage

Loan #0003236643).  In relevant part, their objection stated:

> I am charging the Plaintiffs with <u>negligent misrepresentation and
> fraud . . . for attempting to steal our property located at 4303
> Ammendale Rd., Beltsville, MD 20705 through an illegal foreclosure
> sale set for 3/24/06</u>.  That the Plaintiffs owed a duty to us to have
> conducted due diligence and to have provided us with each monthly
> mortgage principal and interest payment going back to the first
> payment we made in 1999 . . . .  But the Plaintiffs chose to ignore our
> request and sought to foreclose on our property without giving us
> adequate  advanced notice of the sale on 3/24/06.  And neither could
> they provide us with a breakdown of all our monthly mortgage
> payments.  That the Plaintiffs knew or they should have known as our
> fiduciary agents that we trusted that they have kept proper documents
> . . . and also to comply with the Forbearance Agreement we had
> ratified with EMC Mortgage.[3]

*Id.* at E91 (emphasis added).  The foreclosure sale took place on March 24, 2006, and the

proceeds of the sale were $310,000.  *Id.* at E471 (Auditor's Account 'A').  The net proceeds of

the sale, after deducting the usual costs and expenses and attorneys fees, did not cover the

outstanding principal and interest, resulting in a deficit of $62,427.92.  *Id.*; *see also id.* at E472

(Report of Auditor and March 21, 2007 Order of Ratification of Report of the Auditor).  On

---

[3]       Truvillion entered into a Foreclosure Forbearance Agreement with EMC in July
2005, at which time the outstanding principal balance was approximately $209,800 and the loan
was approximately $16,000 in arrears.  *See id.* at E261-66 (Foreclosure Forbearance Agreement).

March 28, 2006, the Circuit Court issued a memorandum declaring Kissi's "objection to the sale

. . . moot as the sale ha[d] taken place as scheduled." *Id.* at E94 (Memorandum of Court).

Construing Kissi's objection as a counterclaim against EMC and Buonassissi, the Circuit Court

instructed these parties to respond. *Id.* at E95 (Memorandum of Court).

EMC moved to dismiss Kissi's counterclaim, arguing that the pleading failed to state

claims for fraud, negligent misrepresentation, emotional distress, unjust enrichment, or breach of

contract, *see id.* at E117-34 (Statement of Grounds and Authorities in Support of EMC's Motion

to Dismiss *Pro Se* Counterclaim), and Buonassissi and the other substitute trustees filed a

response to plaintiff's objection to the foreclosure sale, arguing that Kissi and Truvillion had

adequate notice of the sale, *see id.* at E142-49 (Plaintiff's Response to Objection to the

Foreclsoure [sic] Sale, Response to the Notice of Opposition of Ratification of Sale and Motion

to Dismiss Complaint).  The Circuit Court held a hearing on the motion on July 10, 2006, during

which it denied and overruled Kissi's objections to the foreclosure sale.  *See id.* at E271

(Transcript of Official Proceedings before The Hon. H.C. Dawson on July 10, 2006).  The court

concluded that, at the time of the March 24, 2006 foreclosure sale, Kissi and Truvillion were in

default, that the default was not excused, that Kissi and Truvillion received proper notice of the

sale, and that the sale was in accordance with the Maryland rules.  *Id.* at E6 (Docket Entry 47).

Subsequently, the Circuit Court denied Kissi's and Truvillion's  Motion for New Trial and/or

Motion to Alter or Amend Judgment, or Alternatively, Motion to Revise Judgment.  *Id.* at E286-

87 (August 21, 2006 Order).   Further, the Circuit Court ordered Kissi and Truvillion to pay

reasonable attorneys fees to Buonassissi and EMC.  *Id*.

On February 8, 2007, Kissi and Truvillion filed an amended counterclaim, *id.* at E462-70

(First Amended Counterclaim of Defendants David Kissi and Edith Truvillion), only to withdraw it orally at a hearing on February 9, 2007, *id.* at E555-56 (Transcript of Official Proceedings before The Hon. H.C. Dawson on February 9, 2007).  Over Kissi's objections, the Circuit Court granted EMC's and Buonassissi's motions for attorneys fees.  *Id*. at E565-67.  On April 2, 2007, the court entered judgment in favor of Buonassissi in the sum of $31,355.19 and in favor of EMC in the sum of $92,616.17.  *Id*. at E514 (Daily Sheet); *see also id.* at E515 (Judgment for Buonassissi); *id.* at E517 (Judgment for EMC).  Kissi and Truvillion appealed "the final judgment (and all adverse interlocutory orders) entered against them on April 2, 2007 through judgments in favor of [EMC and Buonassissi]."[4]  *Id.* at E518-19 (Notice of Appeal).

David Panzer, Esq. ("Panzer"), of the law firm Greenberg Traurig, LLP, represented EMC in the case entitled *Buonassissi, II v. Truvillion*, CAE 05-15718 (the "foreclosure case"), brought in the Circuit Court of Prince George's County, Maryland, and in the appeal entitled *Kissi v. EMC Mortgage Corp. of Texas*, Case No. 499 (the "foreclosure appeal"), when the foreclosure case was appealed to the Maryland Court of Special Appeals.  *Id.*, Panzer Decl. ¶ 4.

## B.  Kissi's Complaint

Generally, Kissi alleges that EMC, Panzer and Buonassissi foreclosed on the Ammendale Road property "through fraud and misrepresentation."  Complaint of $100 Million Jointly Against The Defendants For Fraudulently Taking Assets They Have No Claim Of Ownership ("Compl.") at 1.  Further, he alleges that Panzer submitted a fraudulent affidavit in the foreclosure case and thereby was awarded an "inflated amount" of legal fees.  *See id.* at 1-2.

---

[4]       "The Foreclosure Appeal was argued on March 7, 2008."  Panzer Decl. ¶ 7.  As of the filing of defendants' motion in October 2008, the Maryland Court of Special Appeals had not issued a decision.  *Id.*

Although Kissi names Buonassissi in the caption of the complaint, there are no factual allegations in the pleading pertaining to him.  According to Kissi, the foreclosure amounted to taking Kissi's property without compensating him, thus depriving him of equity, rental income, and other financial benefits of ownership.  *See id.* at 2.  As noted earlier, he demands damages totalling $100 million.  *Id.*

## II.  DISCUSSION[5]

The defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that the plaintiff's complaint fails to state claims upon which relief can be granted.  *See* Defs.' Mot. at 13-22.

### A.  The Plaintiff's Claims are Barred

#### 1.  Res Judicata (Claim Preclusion)

Generally, a plaintiff is expected to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence."  *U.S. Indus., Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (quoting 1B J. Moore, *Moore's Federal Practice*, ¶ 0.410[1] (1983)).  Under the doctrine of *res judicata* (claim preclusion), a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action.  *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  Res judicata prohibits "the parties to a suit and their privies" from relitigating in a separate proceeding "any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity" and regardless of the soundness of the earlier judgment.  *Hardison v.*

---

[5]      For purposes of this Memorandum Opinion, the Court presumes without deciding that it has personal jurisdiction over the defendants, that venue in this district is proper, and that the defendants properly have been served with process.

*Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously") (citation omitted).  Here, the defendants argue that the Maryland foreclosure case has preclusive effect.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  The Court therefore looks to Maryland law to determine whether this action is barred.  *See Snell v. Mayor & City Council of Havre de Grace*, 837 F.2d 173, 175 (4th Cir. 1988); *McLaughlin v. Alban*, 775 F.2d 389, 391 (D.C. Cir. 1985).  "Under Maryland law . . . there are three requirements for the application of [res judicata].  First, there must have been a final judgment on the merits in the earlier litigation.  Second, there must be an identity of parties or their privies.  Third, the causes of action in the successive action[] must be the same."  *Snell*, 837 F.2d at 175 (citation omitted).  Maryland has adopted a transactional approach for determining whether the causes of action are the same, whereby courts consider "what factual grouping constitutes a transaction and what groupings constitute a series [of connected transactions], [which] are . . . determined pragmatically, giving weight to such considerations as whether facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Kent County Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987) (citation and internal quotation marks omitted).

Here, the defendants have demonstrated that the Circuit Court for Prince George's County, Maryland entered a final judgment on the merits of the foreclosure case: it overruled

Kissi's objections to the foreclosure sale of the Ammendale Road property, deemed the sale in accordance with Maryland law, approved the auditor's report, and awarded attorney's fees to EMC and Buonassissi.  There also is no dispute that the parties to the foreclosure case are the same parties to the instant civil action.  Finally, the causes of action in the two cases are the same, that is, Kissi's challenge to the foreclosure sale on the ground that defendants accomplished it through fraud and misrepresentation and were rewarded for their alleged misdeeds with substantial judgments for attorney fees.

Notwithstanding Kissi's new assertion that the defendants "conspired as a racketeering enterprise to take [his] properties," A 28 USC § 1746 Affidavit (#1901) Supplement to Opposition to Dismiss Request for Transfer to Maryland ("Pl.'s Opp'n") at 4, he cannot escape the consequences of res judicata "simply by changing the theory of recovery or seeking a different remedy . . . [or] simply by adding new factual allegations," so long as the subject matter of the two suits is substantially the same.  *Snell*, 837 F.2d at 176.  In both actions, Kissi seeks "to hold the same defendants answerable in damages for precisely the same conduct."  *Id.* at 177.  Nor can the plaintiff escape the consequences of claim preclusion because an appeal remains pending before the Maryland Court of Special Appeals.  *See Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court."); *Nader v. Democratic Nat'l Comm*., 590 F. Supp. 2d 164, 169 (D.D.C. 2008) (concluding that a dismissal order is "final for res judicata purposes even though it is pending on appeal"); *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1040 (Md. 2004) ("Indeed, to strip a judgment of its preclusive effect merely because an appeal is pending, in our view, undermines the very

8

purpose of the doctrine of res judicata . . . .").

## 2.  Collateral Estoppel (Issue Preclusion)

Collateral estoppel (issue preclusion) bars the relitigation of issues previously tried and

decided in a court of competent jurisdiction involving the same parties.  *See Ashe v. Swenson*,

397 U.S. 436, 443-44 (1970).  "The Supreme Court has defined issue preclusion to mean that

'once a court has decided an issue of fact or law necessary to its judgment, that decision may

preclude relitigation of the issue in a suit on a different cause of action involving a party to the

first case.'"  *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting

*Allen v. McCurry*, 449 U.S. 90, 94 (1980)), *cert. denied*, 506 U.S. 1078 (1993).  "To preclude

parties from contesting matters that they have had a full and fair opportunity to litigate protects

their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial

resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent

decisions."  *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

As with res judicata, the Court looks to the law of Maryland to determine whether

collateral estoppel bars relitigation of specific issues.  *See Casco Marina Dev., LLC v. M/V*

*Forrestall*, 384 F. Supp. 2d 154, 158-59 (D.D.C. 2005).  Under Maryland law, to invoke the

doctrine of collateral estoppel:

> [t]he proponent must establish that: (1) the issue sought to be
> precluded is identical to one previously litigated; (2) the issue must
> have been actually determined in the prior proceeding; (3)
> determination of the issue must have been a critical and necessary
> part of the decision in the prior proceeding; (4) the prior judgment
> must be final and valid; and (5) the party against whom estoppel is
> asserted must have had a full and fair opportunity to litigate the issue
> in the previous forum.

9

*Campbell*, 852 A.2d at 1037-38 (citations omitted).

Kissi alleges fraud and misrepresentation in effecting the foreclosure and sale of the Ammendale Road property both in the instant civil action and in the foreclosure case.  As noted already, the Circuit Court for Prince George's County, Maryland found Kissi in default, deemed the foreclosure sale in accordance with Maryland rules, concluded that Kissi had adequate notice of the sale and, accordingly, entered a final judgment in defendants' favor.  Kissi had a full and fair opportunity to litigate his claims in the Circuit Court and, indeed, had great incentive to do so in order to maintain ownership and control of the Ammendale Road property.  Moreover, the pendency of the appeal before the Maryland Court of Special Appeals has no impact on the application of collateral estoppel.  *See S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 1011, 1018 (D.C. Cir. 1984) ("[C]ollateral estoppel [effect] may be applied to a trial court finding even while the judgment is pending on appeal."); *Synanon Church v. United States*, 579 F. Supp. 967, 974 (D.D.C. 1984) ("The rule for both District of Columbia and federal courts is that the pendency of an appeal does not impair the conclusiveness of a final judgment.").  Accordingly, the Court concludes that the doctrines both of claim preclusion and issue preclusion bar the relitigation of the plaintiff's claims before this Court.

### B.  The Plaintiff Fails to Allege a Claim of Fraud

A party alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Thus, the pleader generally must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 105 (D.D.C. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

Here, Kissi alleges fraud only in the broadest of terms.  *See* Compl. at 1 (Count I)

(alleging that defendants foreclosed on the Ammendale Road property "through fraud and

misrepresentation"); *see id.* (Count II) (alleging that, upon the "fraudulent foreclosure" of the

Ammendale Road property, Panzer submitted a "fraudulent Affidavit").  Absent allegations as to

the time, place and content of defendants' allegedly false representations or fraudulent acts, the

fraud claim has been inadequately pled and fails to survive the motion to dismiss for this reason

also.  *See, e.g., U.S. ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 75 (D.D.C. 2008)

(quoting *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)) (dismissing two

counts of complaint for absence of allegations "regarding 'the time, place and content of the false

misrepresentations, the fact[s] misrepresented and what was obtained or given up as a

consequence of the fraud'").

## III.   CONCLUSION

For all of the above reasons, the Court concludes that this action must be dismissed

because the complaint fails to state claims upon which relief can be granted.  Accordingly, the

Court grants defendants' motion to dismiss and will dismiss this civil action in its entirety.

An Order accompanies this Memorandum Opinion.


                                        _____/s/_____

                                        REGGIE B. WALTON
                                        United States District Judge

DATE:  June 23, 2009

11